IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS PAUL RICHARD, SR., EM-8033,<br>    Petitioner, | )<br>)<br>) |
| v. | ) Civil Action No. 07-16 |
| DAVID DIGUGLIELMO, et al.,<br>    Respondents. | )<br>)<br>) |

OPINION AND ORDER

Mitchell, M.J.

Thomas Paul Richard, Sr., has presented a petition for a writ of habeas corpus. For the reasons set forth below, the petition will be dismissed, and because no viable constitutional issues exist upon which a reasonable jurist could conclude that there is a basis for appeal, a certificate of appealability will be denied. Judgment will be entered accordingly.

Thomas Paul Richard, Sr. an inmate at the State Correctional Institution at Graterford has presented a petition for a writ of habeas corpus. The petition was originally filed in the United States District Court for the Eastern District of Pennsylvania on September 11, 2006, and transferred to this Court on January 5, 2007. On January 9, 2007, the respondents and the District Attorney were directed to file an appropriate response, however, because the state court records were before the Superior Court of Pennsylvania, the respondents moved on February 7, 2007, to delay the filing of their response pending a remand of the record. That motion was granted, and ultimately, an answer was filed on December 28, 2007.

Richard is presently serving a 25 ½ to 51 year sentence following his conviction, by a

1

jury, of rape, involuntary deviate sexual intercourse, aggravated indecent assault, simple assault, endangering the welfare of children and corruption of the morals of a minor at No. 3607 of 2000 in the Court of Common Pleas of Westmoreland County, Pennsylvania. This sentence was imposed on October 25, 2000.[1]

> An appeal was taken to the Superior Court in which the issues presented were:
>
> I. Whether the trial court erred in denying appellant's motion pursuant to Rule 1100 [Pa.R.Crim.P]?
>
> II. Whether trial counsel was ineffective for failing to challenge the admissibility of certain evidence, and the results of DNA analysis therefrom, based upon defects in chain of custody?
>
> III. Whether trial counsel was ineffective for failing to offer expert testimony to refute the Commonwealth's DNA expert at trial?[2]

On April 12, 2002, the judgment of sentence was affirmed. Com. v. Richard, 803 A.2d 276 (Pa.Super.2002).[3] Allowance of appeal was denied by the Pennsylvania Supreme Court on August 27, 2002.

On August 27, 2003, a post-conviction petition was filed and subsequently amended on April 7, 2004 and again on October 25, 2004.[4] On January 12, 2005, post-conviction relief was denied. An appeal was taken to the Superior Court in which the issues raised were:

> 1. When evidence does not show "penetration" or "genitals", is prior counsel ineffective for not arguing for acquittal on an aggravated indecent assault charge?

---

[1] See: Petition at ¶¶ 1-6.

[2] See; Document #72 at p.18.

[3] See: Document No.73 at pp.10-21.

[4] See: Document No.73 at p.35.

2

2. Is trial counsel ineffective for failing to call a competing DNA expert when he would have attacked the means employed by the Commonwealth's expert to reach its conclusion that petitioner was the source of the semen and is appellate counsel ineffective for not documenting this claim on direct appeal?

3. When there is a 12 hour delay in reporting a sexual assault, is trial and appellate counsel ineffective for not arguing about a prompt complaint jury instruction?

4. When lay opinion on the credibility of witnesses is admitted, is prior counsel ineffective for not objecting to or raising the issue on appeal?

5. When the trial court uses two impermissible factors as aggravating circumstances, is prior counsel ineffective for not raising the issue?[5]

On January 12, 2005, post-conviction relief was denied, and on March 13, 2006, the denial of post-conviction relief was affirmed by the Superior Court [6] and on August 29, 2006, the Pennsylvania Supreme Court denied leave to appeal.

On October 4, 2006, Richard filed a second post-conviction petition and that petition was dismissed on December 14, 2006.[7] An appeal was taken to the Superior Court in which the issues presented were:

1. Did the PCRA Court commit reversible error, as a matter of law, in dismissing the petition, stating that Appellant does not qualify to meet the PCRA exceptions, and that Appellant is not entitled to any relief, without affording the Appellant an evidentiary hearing?

2. Did the PCRA Court commit reversible error, as a matter of law and fact, by not ordering Appellant to file an Amended Petition where allegations of egregious prosecutorial misconduct was diligently discovered and presented to the Court in Appellant's response, and correspondence with the Court that would qualify as a "New Claim" that would undoubtedly otherwise trigger the PCRA exceptions, and to rise to a level of an egregious miscarriage of justice, that no civilized

---

[5] See: Document 73 at p.33.

[6] See: Document No.75 at p.2.

[7] See: Document No.76 at pp.2 and 3.

3

society could possibly tolerate, that would otherwise in itself warrant the immediate discharge of the Appellant?[8]

The dismissal of the second post-conviction petition as having been untimely filed was affirmed by the Superior Court on September 18, 2007.[9] The instant petition was executed on September 7, 2006,[10] and filed in the Eastern District Court on September 11, 2006. In his petition, Richard contends that he is entitled to relief on grounds of:

    1. Ineffective assistance of trial counsel for failure to fully litigate the search and seizure issue.

    2. Ineffective assistance of trial counsel for failure to challenge the DNA evidence.

    3. Ineffective assistance of trial counsel for failing to seek the exclusion of the petitioner's spouse's written statement.

    4. Ineffective assistance of appellate counsel for failing to challenge the petitioner's sentence.

    5. Ineffective assistance of appellate counsel for failing to challenge the Commonwealth's Notice to the tender years exception.

    6. Prosecutorial misconduct in that the prosecutor manipulated the evidence to support the victim's testimony.

It is provided in 28 U.S.C. §2254(b) that:

> An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence

---

[8] See: Document No.75 at p.21.

[9] See: Document No.76 at p.2-5.

[10] We note that the instant petition was executed on September 7, 2006, or almost immediately after the Pennsylvania Supreme Court's August 29, 2006 denial of leave to appeal from the denial of post-conviction relief and prior to the filing of the second post-conviction appeal. Thus, it would appear that the instant petition was timely filed and the Commonwealth concedes this issue in its answer, Document No.70 at p.9.

of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case.

In <u>Hameen v. Delaware</u>, 212 F.3d 226, 235 (3d Cir. 2000), the Court determined:

> The Court in <u>Williams v. Taylor</u> held that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, further held that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Thus, under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." The Court in <u>Williams v. Taylor</u> made it clear that the "contrary to" and "unreasonable application"clauses have independent meaning.

In the instant case, it would appear that the only issues which the petitioner seeks to raise here that he has also timely raised in the appellate courts of the Commonwealth are his claims that counsel was ineffective for failing to challenge the DNA evidence and its chain of custody, and that appellate counsel was ineffective for failing the challenge the length of the sentence imposed.

In <u>Coleman v.Thompson</u>, 501 U.S. 722,750 (1991), the Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.

Since there is no showing of cause for the petitioner's failure to raise the other issues in the state courts and there is no meritorious claim that a fundamental miscarriage of justice would result

from failing to consider those issues here, they are procedurally defaulted.

The factual background for Richard's conviction is set forth in the March 13, 2006 Memorandum of the Superior Court:

> On September 10, 1999, the victim, L.R., and her younger brother went to spend the weekend with their father and his new wife. L.R. was eight years old at the time...
>
> On this night Richard and his new wife got into an argument and the wife left their apartment. With the younger brother already asleep, Richard locked the apartment door and put a chair under the door knob. He then brought L.R.. into the bathroom and closed that door. Once in the bathroom, Richard forced his daughter to perform oral sex on him. He sat her on his lap and put his penis in her vagina. Richard used his hands to facilitate this penetration. He also put his daughter across the bathroom sink, stomach down, and anally penetrated her. While doing this, he wound up pushing against his daughter to the point she hit her face against the vanity mirror, causing her nose to bleed. When he had finished, Richard wiped himself off with a towel.
>
> The next morning, L.R. told her step-mother about the incident, but the step-mother took no action. When L.R. and her brother were picked up by their mother and grandmother, L.R. once again reported the incident. L.R. was taken to a nearby hospital where she was examined by the emergency room doctor. A rape kit was prepared... The doctor's examination of L.R. was consistent with the incident as described ... The findings of subsequent medical examinations were also consistent with vaginal penetration. Finally, seminal traces found on L.R.'s shorts and underwear matched Richard's DNA profile.[11]

The first issue which warrants examination, is petitioner's claim that counsel was ineffective for failing to mount a challenge to the DNA evidence and its chain of custody. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also

---

[11] See: Document 75 at pp.2-3.

7

Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987), cert. denied, 484 U.S. 863 (1987). As a result, if a petitioner fails on either prong, he loses. Holladay v. Haley, 209 F.3d 1243, 1248 (11th 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.")(citation omitted); Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one.")

    In the instant case this issue was succinctly set forth by the Superior Court:

> Richard claims counsel was ineffective for failing to call his own DNA expert to challenge the Commonwealth's expert. Prior to trial, a DNA expert, Dr. Thomas McClintock, supplied Richard with an opinion letter stating there were certain problems with the Commonwealth's DNA testing. The letter also stated that after reviewing the Commonwealth's DNA report he could not rule out Richard as a DNA contributor. Trial counsel spoke with Dr. McClintock after receiving the letter and given Dr. McClintock's inability to rule out Richard, decided not to call Dr. McClintock to testify. Trial counsel did use information gleaned from Dr. McClintock to challenge the veracity of the Commonwealth's DNA expert... and

8

Richard admitted the DNA was his anyway...[12]

Additionally, at the post-conviction hearing held on September 28, 2004, trial counsel testified. Specifically, when asked why he did not call Dr. McClintock to testify, he stated that although the doctor was willing to testify he did not call him as a witness because he "didn't feel that his testimony would be helpful to the case" and "In viewing everything that [Dr. McClintock] told me, I didn't see value in attempting to challenge the DNA."[13] However, counsel did testify that he used Dr. McClintock as an adviser in preparation for his cross-examination of the Commonwealth's expert.[14] Furthermore, counsel had determined that his best strategy was to present the petitioner's alternative theory of how his semen appeared on his daughter's clothing thus creating an issue of credibility.[15]

At that same hearing, appellate counsel was questioned regarding the appropriateness of the sentence imposed and he testified that he "thought [Richard] got hammered as far as the sentencing" but that he did not see the matter as an appellate issue.[16] He further testified that he had reviewed the DNA matter with Dr. McClintock, and it was his opinion that if a new trial was granted he would not have called Dr. McClintock to testify as a defense witness.[17]

---

[12] See: Document No.75 at pp.6-7.

[13] See: Transcript of the hearing of September 28, 2004 at pp.42-43, 60.

[14] Id. at pp.44-45, 60.

[15] Id. at pp.61-62.

[16] Id. at p.98-99.

[17] Id. at p.100-101.

Clearly, the manner in which the defense challenged the DNA evidence was one of strategy, and as such does not fall below a standard of professional competence. Rolan v. Vaughn, 445 F.3d 1485 (3d Cir 2006).

Petitioner also challenges the chain of custody of the DNA samples and alleges that counsel was ineffective for failing to challenge the admissibility of the test results based on an unclear chain of custody. This argument was raised in Richard's direct appeal and the Superior Court noted:

> [Testimony adduced at trial established that the victim's rape kit was collected and prepared in the hospital emergency room by Linda Bauer, R.N., and James F. Burke, III, M.D. Ms. Bauer sealed and labeled the items comprising the rape kit with evidence tape, and retained the sealed evidence in her possession until she signed it over to Officer Aaron C. Thompson of the North Belle Vernon Police Department. Officer Thompson retained the sealed rape kit in his possession while he was in the hospital and then transported it to the North Belle Vernon police station. Officer Thompson turned the evidence over to Chief James Bedsworth who placed it into the evidence storage locker in his office. Officer Thompson observed the Chief place the evidence into the locker. Only chief Bedsworth has access to the evidence locker.
>
> Chief Bedsworth subsequently removed the sealed rape kit from the evidence locker and gave it to Officer Daniel Cope. Officer Cope retained the sealed rape kit in his possession and transported it, along with other physical evidence, to the Pennsylvania State Police regional crime laboratory in Greensburg. Laboratory personnel requested that the sealed evidence be relabeled. Officer Cope returned it to the North Belle Vernon police station. Chief Bedsworth personally received the sealed evidence from Officer Cope and relabeled it pursuant to the request from the lab. The Chief did not unseal the rape kit. He retained the sealed evidence in the evidence locker in his office until he turned it over to "the officer" for retransport to the crimes laboratory in Greensburg. Chief Bedsworth did not name "the officer" who was assigned to retransport the sealed evidence. However, Mark Mogle, the forensic serologist from the crimes laboratory, testified that when he received the relabeled rape kit for analysis it was "all sealed with evidence tape." (Record citations omitted).[18]

---

[18] See: Document No. 73 at pp. 15-16.

10

Based on this recitation, the Superior Court concluded that while the name of "the officer" might have been helpful in establishing the chain of custody, there was nothing in the record to suggest that there was any defect in that chain.[19]

Initially, we note that as a matter of evidence, this claim is not properly raised here unless a violation of constitutional proportion occurred. Estelle v McGuire, 502 U.S. 62 (1991); Reynolds v. Ellingsworth, 843 F.2d 712 (3d Cir.) cert. denied 109 S.Ct. 403 (1988). Because there is no showing of any defect in the chain of custody, let alone one of constitutional proportion, this claim does not provide a basis for relief.

Thus, the claim of the petitioner that counsel was constitutionally defective is without merit and does not provide a basis for relief here.

The other issues which the petitioner raises, is the severity of the sentence imposed. As a general proposition, sentencing is a matter of state criminal procedure and does not fall within the purview of federal habeas corpus. Wooten v. Bomar, 361 U.S. 888 (1959). For this reason, a federal court normally will not review a state sentencing determination that falls within the statutory limits. Gleason v. Wellborn, 42 F.3d 1107 (7th Cir.1994), cert. denied 514 U.S. 1109 (1995).

Following trial, the petition was convicted of:

Court 1. Rape, 18 Pa.C.S.A. 3121(a)(6).
Count 2. Involuntary Deviate Sexual Intercourse, 18 Pa.C.S.A. 3123(a)(6).
Count 3. Aggravated Indecent Assault, 18 Pa.C.S.A. 3125(7).
Count 4. Simple Assault, 18 Pa. C.S.A. 2701(a)(1).
Count 5. Involuntary Deviate Sexual Intercourse, 18 Pa.C.S.A. 3123(a)(6).
Count 6. Endangering Welfare of Children, 18 Pa. C.S.A. 4304

---

[19] Id. at p.16.

Count 7. Corruption of Minors, 18 Pa. C.S.A. 6301.[20]

On October 25, 200, the petitioner was sentenced on Count 1 to seven to fourteen years; on Count 2 to seven to fourteen years consecutive to the sentence imposed on Court 1; on Count 3 to four and a half to nine years consecutive to the sentence imposed on Count 2 and on Count 5 to seven to fourteen years consecutive to the sentence imposed on Count 3.[21] No additional sentences were imposed on counts 4, 6 or 7.[22] Thus, a total sentence of twenty-five and a half to fifty-one years was imposed.

Counts 1, 2 and 5 are classified as first degree felonies and Count 3 is classified as a second degree felony. Under Pennsylvania law, first degree felonies are punishable by imprisonment for up to twenty years, and second degree felonies by imprisonment for up to ten years.[23] Thus, the sentences imposed are clearly within the statutory maximum and do not provide a basis for relief here.

Additionally, in imposing sentence, the court observed that "the Commonwealth has established that it is more likely than not that Mr. Richard is a sexually violent predator, but the standard is clear and convincing evidence ... I don't think they met [this] standard..."[24] Prior to imposing sentence, the trial court noted that in similar cases there appears to be a mechanical tendency to imposed the maximum sentences, but that he would impose his sentence "within the

---

[20] See: February 7, 2001, Opinion of the Trial Court, Document 72 at p.35.

[21] Id.

[22] Id.

[23] 18 Pa.C.S.A. 1103.

[24] See: Transcript of sentencing hearing held on October 25, 2000, at p.32.

frame work of the guidelines" although he considered the case to contain aggravating factors.[25]

Furthermore, as the Superior Court observed:

Richard is correct that the age of the victim has already been taken into account in both the crimes themselves and in the mandatory minimum sentences that apply when a defendant sexually abuses someone under 13 years of age. Had the trial court relied only upon these two factors in sentencing Richard we might well agree that a new sentencing hearing was required. However, the trial court makes it clear in its rule 1925(a) opinion, and our independent review of the record confirms, that the trial court relied on a number of other factors in sentencing Richard to an aggravated range of 25 ½ to 51 year incarceration.

The pre-sentence report and Sexual Offenders Assessment Board report on Richard reveals a history far more troubling than one would expect from Richard's prior record score of 1. In 1988, after two mistrials on charges of rape, IDSI, simple assault, and terroristic threats, Richard pled guilty to minor charges... He has multiple disorderly conduct and harassment convictions. He is a habitual and chronic alcoholic who denies he has a problem... He was charged with simple assault for hitting his current wife in the head and cutting her head with a kitchen knife. He was charged with assault against his wife a second time for knocking her to the ground, choking her and kicking her several times in the head. Those charges were dropped when his wife failed to appear against him; however, she subsequently obtained a PFA based on the incident. While the instant charges against him were pending, Richard was arrested and charged with assault and terroristic threats for threatening to shoot a constable and a police officer who were attempting to serve a subpoena on his wife.

The above listed incidents are only a partial retelling of Richard's history. The trial court knew of all this and his significant history of violence against women. Due to this history, and in spite of the fact the court did not find Richard to be a sexually violent predator against the recommendation of the Sexual Offenders Assessment Board, the trial court found Richard to be a continuing risk to society.[26]

For this reason, the petitioner's allegations that the imposed sentence was excessive, is likewise without merit here.

---

[25] Id. at p. 51.

[26] See: Document No. 75 at pp.11-12.

Because we find that the petitioner's conviction was not contrary to or an unreasonable application of clearly established federal law, there is no basis for relief. Accordingly, the petition of Thomas Paul Richard, Sr. for a writ of habeas corpus will be dismissed and because there are no viable issues upon reasonable jurists could conclude that there is a basis for appeal, a certificate of appealability will be denied.

An appropriate Order and Judgment will be entered.

ORDER

AND NOW, this 8th day of January, 2008, for the reasons set forth in the foregoing Opinion, the petition of Paul Richard, Sr., for a writ of habeas corpus is dismissed, and because no viable constitutional issues exist upon which a reasonable jurist could conclude that there is a basis for appeal, a certificate of appealability is denied.

                                              s/Robert C. Mitchell,
                                              United States Magistrate Judge